## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| ANNIE B. JONES, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:19-00201-N |
| | ) | |
| ANDREW M. SAUL, | ) | |
| *Commissioner of Social Security*, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Annie B. Jones brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.[1] Upon due consideration of the parties' briefs (Docs. 13, 14, 15) and those portions of the administrative record (Doc. 8) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

### I.   *Procedural Background*

Jones filed the subject application for a period of disability and DIB with the

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 19). With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 17, 20).

Social Security Administration ("SSA") on January 15, 2016. After it was initially denied, Jones requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. Such a hearing was held on November 9, 2017. On March 23, 2018, the ALJ issued an unfavorable decision on Jones's application, finding her not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 8, PageID.98-110).

The Commissioner's decision on Jones's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied her request for review of the ALJ's unfavorable decision on February 25, 2019. (*See id.*, PageID.46-51). Jones subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper

legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). As the United States Supreme Court has observed, "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). In reviewing the Commissioner's factual findings, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the

findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

[4] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius*

curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

*v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). It is also important to note that a court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974)  (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished) [5] ("Agency actions … must be upheld on the same bases articulated in the agency's

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB requires that a claimant be "disabled," 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v.*

*Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Jones met the applicable insured status requirements through December 31, 2019, and that she had not engaged in substantial gainful activity since the alleged disability onset date of August 5, 2015.[7] (Doc. 8, PageID.103). At Step Two, the ALJ determined that Jones had the following severe impairments: degenerative disc disease, obesity, osteoarthritis, and recurrent arrhythmia with implantable loop recorder. (*Id.*, PageID.103-104). At Step Three, the ALJ found that Jones did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix

---

[7] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citing 42 U.S.C. § 423(a)(1)(A) (2005)).

1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1.  (*Id.*, PageID.104-105).

At Step Four,[8] the ALJ determined that Jones had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b)[9] except

_____

[8] At Step Four,

>  the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

>  If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

>  In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[9] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The Social Security regulations describe "light" work as follows:

she can occasionally climb ramps and stairs, stoop, and crouch; she should never climb ladders, ropes, or scaffolds, kneel, or crawl; she can have only occasional exposure to extremes of heat and cold, only occasional exposure to vibration; she should have no exposure to hazards, such as unprotected heights and dangerous machinery; she would need to alternate between standing and sitting every hour for 1-3 minutes but would remain on task." (Doc. 8, PageID.105-108). Based on the RFC and the testimony of a vocational expert,[10] the ALJ determined that Jones was unable to perform any past relevant work. (Doc. 8, PageID.108-109).

At Step Five, after considering additional testimony from the vocational expert, the ALJ found that there existed a significant number of other jobs in the

---

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[10] "[T]he ALJ may determine whether the claimant has the ability to adjust to other work in the national economy … by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

national economy that Jones could perform given her RFC, age, education, and work experience. (*Id.*, PageID.109-110). Thus, the ALJ found that Jones was not disabled under the Social Security Act. (*Id.*, PageID.110).

## IV.   *Analysis*

### A. Medical Opinion

Jones argues that the ALJ erred by not giving substantial weight to the medical opinion of one of her treating physicians.[11] No reversible error has been shown.

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the

---

[11] The Court finds it appropriate to address Jones's claims of error in a different order than how they are presented in her brief.

claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.[12]

The opinions of non-treating physicians "are not entitled to deference..." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). On the other hand, "[t]he opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at 1440)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at

---

[12] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical evidence, including medical opinions. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to the subject application. *Compare* 20 C.F.R. § 404.1520c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. § 404.1527 (applicable to claims filed before March 27, 2017).

1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings. Further, the [Commissioner] may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory."). "An administrative law judge may not arbitrarily reject uncontroverted medical testimony[,]" *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982), and failure to clearly articulate the reasons for giving less than substantial or considerable weight to the opinion of a treating physician "constitutes reversible error." *Lewis*, 125 F.3d at 1440. "But if an ALJ articulates specific reasons for declining to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861 (11th Cir. 2017) (per curiam) (unpublished) (citing *Moore*, 405 F.3d at 1212). *Accord Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 844 (11th Cir. 2017) (per curiam) (unpublished).

The ALJ summarized the medical opinion of treating physician Maurice Fitz-Gerald, M.D., as follows:

> Dr. Fitz-Gerald opined on March 17, 2016 … , that the claimant could only sit for one hour out of an eight-hour day; occasionally lift/carry up to 5 pounds; but never stand or walk (Exhibit 9F). He stated that the claimant could never perform other postural maneuvers such as

stooping, crouching, kneeling, crawling, or balancing. He related that the claimant would be absent from work for more than three times a month. Moreover, he stated that little improvement was likely to occur and that the claimant's pain was likely to worsen with time.

(Doc. 8, PageID.106). The ALJ gave "Dr. Fitz-Gerald's assessment no weight[,]" finding that the opinion was not supported by Dr. Fitz-Gerald's own treatment notes or bolstered by the record as a whole. (*See id.*). Both of these reasons constitute good cause to reject a treating physician's opinion, *see Winschel*, 631 F.3d at 1179, and substantial evidence supports them.[13] The ALJ found that the record evidence "consistently notes that [Jones]'s gait and stance were normal" (Doc. 8, PageID.106), and her decision cites multiple examples of such notations in the record. (*See id.*, PageID.104 (Jones's "gait and station were normal" at August 6, 2015 examination by Dr. Fitz-Gerald (citing Administrative Ex. 4F)), 106 (Jones's "gait and station were normal" at February 19, 2016 examination by Dr. Fitz-Gerald), 107 (Jones had normal "gait and stance" at June 6 and July 18, 2016 examinations by treating nurse practitioner, and at August 6, 2016 examination by Dr. Fitz-Gerald), 108 (Jones had normal "gait and stance" at September 7, 2016 and March 2, 2017 examinations by treating nurse practitioner, and at November 9,

---

[13] The ALJ also "note[d] that Dr. Fitz-Gerald is the claimant's primary care physician, and does not specialize in orthopedic difficulties." (Doc. 8, PageID.106). While the Commissioner will "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist[,]" 20 U.S.C. § 404.1527(c)(5), the undersigned agrees with Jones that this consideration alone does not constitute good cause to reject a treating physician's opinion, nor is it reasonably clear from the ALJ's decision or the record that it is even a particularly compelling factor undermining Dr. Fitz-Gerald's opinion here. However, any error in this regard is harmless, as the ALJ has articulated other "good cause" to reject the opinion which is supported by substantial evidence.

2016 examination by Dr. Fitz-Gerald)). The ALJ also noted that in his examination notes from March 17, 2016 – the same day he completed his medical opinion – "Dr. Fitz-Gerald stated that [Jones]'s pain did not significantly affect her quality of life[,]"that she "was not feeling poorly," and that she was "in no acute distress." (*Id.* (citing Administrative Exhibit 10F)).

Jones argues that the ALJ's discussion of Dr. Fitz-Gerald examination notes omits other notations that are more supportive of his opinion. However, many of the notations Jones cites are either her own subjective complaints, notations of non-specific levels of pain being elicited by certain exam procedures, and notations of tenderness, spasms, abnormalities, and other physical conditions. (*See* Doc. 14, PageID.690-692). While these are certainly supportive of some limitations due to Jones's pain, they do not undermine the ALJ's decision to reject Dr. Fitz-Gerald's extreme opinion of disabling pain. *Cf. Moore*, 405 F.3d at 1213 n.6 ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she has varus leg instability and shoulder separation. However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (' " severity" of a medically ascertained disability must be measured in terms of its effect upon ability to work')."). And even if the evidence preponderates in favor of Dr. Fitz-Gerald's opinion, the Court must still affirm where, as here, the ALJ's reasons for discounting that opinion are supported by substantial evidence. *Ingram*, 496 F.3d at 1260. A court "will not

second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore*, 405 F.3d at 1212).[14] Accordingly, the undersigned is not persuaded that the ALJ reversibly erred in rejecting Dr. Fitz-Gerald's medical opinion.

## B.   RFC

Jones also argues that the Commissioner's final decision should be reversed because "[t]here is not a sufficient nexus between the ALJ's residual functional capacity and the entirety of medical records in the file." (Doc. 14, PageID.685). The undersigned is not persuaded.

"In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's]

---

[14]    Citing *Walden v. Schweiker*, 672 F.2d at 839, Jones appears to argue that her diagnosis of arthritis should automatically validate Dr. Fitz-Gerald's opinion. The undersigned disagrees. In *Walden*, the court found that the ALJ erred by appearing to "require some laboratory tests to validate [a] doctor's diagnosis" of arthritis, noting that "[a]rthritis is an affliction of such common occurrence th[at] obvious manifestations are common knowledge." 672 F.2d at 839. The *Walden* court therefore found that the doctor's arthritis diagnosis contradicted the ALJ's finding that "no objective or clinical findings" supported the claimant's claims of disability. *Id. Walden* concerned an ALJ's imposing unduly strict standards for objective medical evidence, and did not concern "good cause" to reject a treating physician's medical opinion.

Jones also argues that the Commissioner's decision should be reversed because the ALJ failed to explicitly consider all of the factors set out in 20 C.F.R. § 404.1527(d) when weighing Dr. Fitz-Gerald's opinion. Jones cites no authority suggesting that an ALJ must do so when finding "good cause" to reject a treating physician's opinion, and the Eleventh Circuit has stated the opposite, albeit in an unpublished opinion. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished) ("[T]he ALJ is not required to explicitly address each of th[e] factors[ in 20 C.F.R. § 404.1527(d)]. Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions.").

decision." *Chester*, 792 F.2d at 131. If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter*, 791 F.2d at 1548. Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)). Eleventh Circuit precedent does not require exacting detail or precision in an ALJ's decision, only that the ALJ "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. *See also Garcia v. Comm'r of Soc. Sec.*, No. 20-10466, 2020 WL 6441104, at *2 (11th Cir. Nov. 3, 2020) (per curiam) (unpublished) ("We will reverse only if the ALJ 'fails to state with at least some measure of clarity the grounds for his decision.' *Winschel*, 631 F.3d at 1179 (internal quotation mark omitted). []Here, the ALJ did not commit reversible error in his articulation of the weight accorded to Dr. Tauler's treatment notes. Although the ALJ did not refer to each of Dr. Tauler's treatment notes, his decision illustrates that he considered the content of the notes and explained 'with at least some

measure of clarity' the grounds for discounting Dr. Tauler's medical opinions. *Id.* Thus, we find no reversible error in this regard."); *Brito v. Comm'r, Soc. Sec. Admin.*, 687 F. App'x 801, 804 (11th Cir. 2017) (per curiam) (unpublished) ("Here, substantial evidence supported the ALJ's finding that Brito's testimony regarding her symptoms was not entirely credible. Although Brito points to other evidence in the record that was consistent with her hearing testimony and to which the ALJ did not specifically refer in making her credibility determination, the ALJ was not required to examine or reference every piece of evidence, so long as it is evident, as it is here, that the ALJ considered Brito's medical condition as a whole." (citing *Mitchell*, 771 F.3d at 782)).[15] Here, the undersigned finds that the ALJ's decision adequately indicates that she considered the record as a whole in formulating the RFC. That Jones can point to some evidence in the record cutting against the ALJ's decision does not require reversal, and consideration of that evidence does not convince the undersigned that at least substantial evidence does not support the RFC.

Jones argues that the RFC should be deemed suspect because it "all but

---

[15] In arguing this claim of error, Jones's brief relies on a line of decisions from both this Court and other district courts in this circuit, suggesting that ALJs must "show their work" in formulating RFCs by providing "a sufficient rational link" to specific substantial evidence in the record. (Doc. 14, PageID.686-687). "[D]istrict court opinions are not binding precedent[,]" *Washington v. Rivera*, 939 F.3d 1239, 1244 n.8 (11th Cir. 2019); *see also, e.g.*, *United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc) (per curiam) ("The opinion of a district court carries no precedential weight, even within the same district."), and the undersigned does not find those opinions to be persuasive to the extent Jones suggests they require a level of detail in an ALJ's decision beyond that required by the Eleventh Circuit authorities cited in the paragraph immediately preceding this footnote.

tracks" the RFC determination of a Single Decision Maker (SDM)[16] who denied Jones's application at the initial administrative level. (Doc. 14, PageID.687). Jones is correct that "the 'SDM' designation connotes no medical credentials." *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) (per curiam) (unpublished) (citing 20 C.F.R. § 404.906(a), (b)(2)). Therefore, "an SDM with no apparent medical credential[ is] not an acceptable medical source." *Id.* at 872. *See also Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (per curiam) (unpublished) ("the ALJ mistakenly referred to the SDM as a doctor and should not have given any weight to her opinion because she was merely an SDM").

However, as Jones concedes, the ALJ's decision never even referenced the SDM's determination, much less gave it any weight. As the Commissioner correctly points out, there are differences between ALJ's RFC and the SDM's opinion. While the SDM found that Jones could occasionally kneel and crawl (Doc. 1, the ALJ found that Jones could never kneel and crawl. *Compare* (Doc. 8, PageID.105) *with* (*id.*, PageID.124). Moreover, the RFC imposed an additional condition on Jones's ability to stand and sit, stating that "she would need to alternate between standing and sitting every hour for 1-3 minutes…" (*Id.*, PageID.105). The undersigned finds that the ALJ's decision adequately indicates that she independently considered the record as a whole in arriving at her decision. *See Cooper*, 521 F. App'x at 807 "any error in [considering the SDM's opinion] was harmless because the ALJ stated that he considered *all* of the evidence in the record, … there is nothing to indicate that

---

[16] For background on SDMs, see 20 C.F.R. § 404.906(a), (b)(2).

the opinion of the SDM was anything more than cumulative of other evidence, let alone dispositive"); *also cf. Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902–03 (11th Cir. 2012) ("[T]he ALJ did not err by relying on the opinions of the non-treating physicians, taken alone, in a way that left its decision unsupported by substantial evidence. The evidence supported a contrary conclusion to Dr. Goss's opinion, and the ALJ was not prohibited from reaching that conclusion simply because non-treating physicians also reached it."). That two individuals familiar with SSA disability determination procedures might reach similar conclusions after viewing the same evidence is not, without more, grounds to question a final decision of the Commissioner.

Accordingly, Jones has shown no reversible error in the ALJ's RFC determination.

## C.  Vocational Expert Hypothetical

Jones's final claim of reversible error is that the ALJ "failed to include any limitations in the hypotheticals regarding [her] ability to use her bilateral upper extremities." (Doc. 14, PageID.693). While presenting this claim as a Step Five error in the hypothetical, [17] Jones's claim is in fact a challenge to the RFC at Step Four for failure to include any such limitations. Jones primarily relies on Dr. Fitz-

_____

[17] "At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert." *Winschel*, 631 F.3d at 1180 (citations omitted). " 'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.' " *Id.* (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam)).

Gerald's opinion in claiming that such limitations were appropriate. However, as explained above, the ALJ appropriately found good cause to reject Dr. Fitz-Gerald's opinion, and an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161. The other evidence Jones cites does not mandate a finding of any limitations in use of bilateral upper extremities, and as has previously been determined, the undersigned is satisfied that the ALJ considered the record as a whole in formulating the RFC.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Jones's application for benefits is therefore due to be **AFFIRMED**.

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Jones's January 15, 2016 application for a period of disability and DIB is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 23rd day of November 2020.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**